IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CHARLES ALEX VOLPERT                                                                         PLAINTIFF

v.                                            NO. 4:14-cv-00028 JJV

CAROLYN W. COLVIN, Acting Commissioner                                        DEFENDANT
of the Social Security Administration

### MEMORANDUM OPINION AND ORDER

Plaintiff Charles Alex Volpert ("Volpert") commenced the case at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, he challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ").

Volpert maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole and offers several reasons why.[1] He first maintains that his obesity was not addressed by the ALJ. Specifically, Volpert maintains that the ALJ failed to consider "the effects of [Volpert's] obesity and its effects on the combined effects of [his] other disabilities." See Pleading 10 at 12.

At step two of the sequential evaluation process, the ALJ is obligated to identify the claimant's impairments and determine whether they are severe. An impairment is severe if it has "more than a minimal effect on the claimant's ability to work." See

---

[1]The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

Henderson v. Sullivan, 930 F.2d 19, 21 (8th Cir. 1992) [internal quotations omitted]. At step three, the ALJ must determine whether the claimant's impairments, when considered individually and in combination, meet or equal a listed impairment. See Raney v. Barnhart, 396 F.3d 1007 (8th Cir. 2005). The determinations at steps two and three are strictly medical determinations. See Bowen v. Yuckert, 482 U.S. 137 (1987) (step two); Cockerham v. Sullivan, 895 F.2d 492 (8th Cir. 1990) (step three). The ALJ is also obligated to consider all of the claimant's impairments in assessing the claimant's residual functional capacity, which is simply an assessment of "the most [the claimant] can do despite [his] limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record. See Id.

The Court is satisfied that the ALJ's findings regarding Volpert's obesity are supported by substantial evidence on the record as a whole. The ALJ could and did find at step two that Volpert's obesity is not a severe impairment and, when considered individually and in combination with his other impairments, does not meet or equal a listed impairment at step three. Although his weight is excessive, a fact duly noted by one of his physicians, see Transcript at 447, there is no medical evidence it has more than a minimal effect on his ability to work. Moreover, there is no medical evidence that his weight exacerbates his other impairments.

The Court is also satisfied that the ALJ considered Volpert's obesity in assessing his residual functional capacity. It is true that the ALJ made no mention of Volpert's obesity in the context of assessing his residual functional capacity, but the ALJ represented that he considered Volpert's obesity in making the assessment, specifically

noting the obligation to do so under Social Security Ruling 02-1p.[2] Moreover, the extent of the limitation caused by his obesity is not great as he appears to have continued to work despite his excess weight.[3] It is telling that no physician placed a limitation on Volpert's ability to perform work-related activities because of his obesity. See McNamara v. Asture, 590 F.3d 607 (8th Cir. 2010) (nothing in medical record indicated physician ever placed limitation on claimant's ability to work). It is also telling that Volpert has produced no evidence of a limitation caused by his obesity but not considered by the ALJ.

Volpert maintains that a function-by-function analysis was not performed by the ALJ, an analysis that should have specifically taken into account his obesity. Assuming, arguendo, that the ALJ committed error in that regard, the error is harmless as there is no evidence Volpert's obesity limits his ability to perform work-related activities nor has he produced evidence of a limitation caused by or exacerbated by his obesity.

Volpert maintains that the ALJ did not consider the combined effect of his impairments. Specifically, Volpert maintains that the combined effect of his polycythemia, sleep apnea, hypoglycemia, hemochromatosis, environmental sensitivity, and obesity were not considered by the ALJ.

The Court is satisfied that the ALJ adequately considered Volpert's impairments in combination. At step two, the ALJ identified the impairments alleged by Volpert and

---

[2]The Court "take[s] the lower tribunal at its word when it declares that it has considered a matter." See Hackett v. Barnhart, 395 F.3d 1168, 173 (10th Cir. 2005).

[3]In July of 2009, Volpert weighed 255 pounds, giving him a Body Mass Index of approximately thirty-four. See Transcript at 204. He alleged an amended onset date of May of 2010, see Transcript at 32, and testified that he has not worked since May 10, 2010, see Transcript at 34.

found that three of the impairments are severe. The severity of the remaining impairments was discounted because they are "resolved," "intermittent and infrequent," or do not impair his ability to perform work-related activities. See Transcript at 13. At step three, the ALJ found that Volpert's impairments, alone and in combination, do not meet or equal a listed impairment. In assessing Volpert's residual functional capacity, the ALJ considered the limitations caused by the impairments and noted the obligation to consider all of his impairments, including the impairments that were not severe.

Although a more extensive treatment of the combined effect of Volpert's impairments would have been helpful, the Court is satisfied that the ALJ adequately considered Volpert's impairments in combination. Substantial evidence on the record as a whole supports the ALJ's finding with regard to that issue.

Volpert next maintains that little attention was paid to the exertional demands of his past relevant work, and no vocational expert was called to testify regarding Volpert's past relevant work. The specifics of his argument are as follows:

> The ALJ has created an apparent contradiction in his opinion by finding that [Volpert] cannot return to his PRW (Past Relevant Work), but can peform Medium work at Step 5 of the sequential evaluation process. The ambiguity exists because the PRW of [Volpert's] was not established in terms of exertional/weight requirements as being higher than medium work (heavy) [footnote omitted] or less than medium work (light or sedentary). Thus, if [his] previous work was, in fact, medium, then the ALJ has contradicted himself by finding that [Volpert] cannot return to medium work but can do medium work. Bear in mind that [his] previous work history listed such activity as construction work and railroad work–likely medium at least. …

See Pleading 10 at 13.

Any error committed by the ALJ in the foregoing regard is harmless. As the

Commissioner noted, "[e]ven though the ALJ did not explicitly specify the level of exertion required by [Volpert's] past work, [the ALJ] impliedly found it exceeded [Volpert's residual functional capacity] for medium work. Otherwise, [the ALJ] would have found [Volpert] not disabled at step four." See Pleading 11 at 6-7.

Volpert last maintains that his residual functional capacity was not properly assessed. He so maintains largely because his daily activities were improperly evaluated.

The ALJ is obligated to evaluate a claimant's subjective complaints as a part of assessing his residual functional capacity. See Pearsall v. Massanari, 274 F.3d 1211 (8th Cir. 2001). The ALJ must consider the medical evidence and "evidence relating to: [the] claimant's daily activities; duration, frequency, and intensity of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions." See Id. at 1218 [citing Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984)].

Substantial evidence on the record as a whole supports the ALJ's assessment of Volpert's residual functional capacity. Volpert alleged disability due to polychthemia, prostatitis, hemochromatosis, extreme fatigue, and the need for monthly phlebotomies. See Transcript at 30-31. The medical record contains diagnoses of, and treatment for, polychthemia, prostatitis, hemochromatosis, and there is evidence he has monthly phlebotomies.[4] He testified during the administrative hearing that these impairments and

---

[4]Polychthemia is a condition that results in an increased level of red blood cells. The medical record reflects diagnoses of, and treatment for, polychthemia, also characterized at times as erythrocytosis, evaluated hematocrits, and a history of high red blood cells. See Transcript at 281, 286, 375, 376, 379, 515.

Prostatitis is an inflammation of the prostate gland. The medical record reflects diagnoses of prostatitis, also characterized at times as chronic prostatitis and prostate

-5-

the monthly phlebotomies cause extreme fatigue, see Transcript at 34, and the Court accepted that they do cause fatigue. The critical question is the extent to which the fatigue impairs his ability to perform work-related activities.

The medical evidence does not indicate that his fatigue is disabling. In September of 2010, Volpert was seen by Dwight Chrisman, M.D., ("Chrisman") for a "follow up with echo and treadmill stress test." See Transcript at 327. Chrisman noted that although Volpert had complained of fatigue and shortness of breath, his fatigue/malaise and shortness of breath "improved with [hypertension] control." See Transcript at 328.

In January of 2011, Volpert was seen by Julia McCoy, M.D., ("McCoy") after he was apparently unable to perform all of his job duties with Union Pacific Railroad. McCoy released Volpert to full duty at that time as his back pain was "much improved." See Transcript at 749. She only recommended that he continue his "core exercises to help prevent his pain." See Transcript at 749.

In April 2011, an x-ray and magnetic resonance imaging were taken of Volpert's spine. The testing revealed nothing remarkable about his lumbar curve; in his cervical curve, though, the testing revealed that "[f]ocal degenerative disc disease at L5-S1 may be a source of local back pain." See Transcript at 553.

In May 2011, Brad Baltz, M.D., ("Baltz") saw Volpert for his complaints of not

---

abnormalities. See Transcript at 284, 286, 460, 515, 675.
 Hemochromatosis is a condition that results in the absorption of too much iron. The medical record reflects a diagnosis of hemochromatosis. See Transcript at 376, 379
 A phlebotomy is a procedure whereby blood is drawn through an incision in order to obtain a sample for analysis and diagnosis. Volpert testified during the administrative hearing that he has monthly phlebotomies. See Transcript at 34.

-6-

feeling well, pain in his pelvis and prostate, and decreased appetite. Baltz noted Volpert's blood problems but observed that he had "normal muscle strength" and a normal gait. See Transcript at 786. He presented to Baltz again in August 2011 complaining of the following: "ringing in his ears again. Having headaches. Energey is a little low, and he is easily fatigued. Having muscle cramps. Mild occasional shortness of breath with dyspnea on exertion." See Transcript at 843. Baltz, though, found nothing remarkable, noting that Volpert again had "normal muscle strength" and was able to "carry on normal activity." See Transcript at 844.

Volpert's primary assertion is that the non-medical evidence, specifically his daily activities, were not properly evaluated. With regard to those activities, the ALJ found the following:

> [Volpert] alleges that he suffers from medical conditions that cause him to experience severe fatigue, sleepiness, lightheadedness, and difficulty sitting, lifting, stair climbing, kneeling, squatting, seeing, hearing, bending, remembering, concentrating, and understanding. Despite these allegations, [he] indicated that he lives alone with his two minor children, addresses his personal care needs, takes care of his children including preparing meals and getting them ready and taking them to school, performs household chores such as general cleaning, vacuuming, and laundry, drives a car, goes grocery shopping, pays bills, counts change, manages a savings account, and uses a checkbook and money orders. … Here, [Volpert] has described daily activities that are inconsistent with [his] allegations of disabling symptoms and limitations, which weakens his credibility.

See Transcript at 16.

The ALJ's evaluation of Volpert's daily activities is one of the acceptable evaluations permitted by the record and is supported by substantial evidence on the record as a whole. As the ALJ found, Volpert resides with his two children and cares for them. See Transcript at 32, 37, 144. He is able to attend to his own needs, drive a car,

go shopping, pay bills, and manage his money. See Transcript at 145-149. He does some house and yard work, see Transcript at 146, but his father and son help him with the "heavy stuff." See Transcript at 37. The ALJ could find that these activities undermine Volpert's allegation of disabling limitations.

Volpert maintains that no weight was given to the assistance provided by his father and ex-wife or the time it takes him to accomplish certain tasks. Although the mention of those matters would have been helpful, the ALJ's failure to do so does not warrant additional administrative consideration.

Given the foregoing, there is substantial evidence on the record as a whole to support the ALJ's findings. Volpert's complaint is therefore dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 17th day of April, 2015.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE